```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF GEORGIA
 2                    ATLANTA DIVISION


 3


 4  United States of America,    )    Case No.
                                 )    1:13-CR-456-SCJ
 5       Plaintiff,              )
                                 )
 6       V.                      )
                                 )
 7  Radric Davis,                )    Atlanta, Georgia
                                 )    May 13, 2014
 8       Defendant.              )


 9

                     Transcript of Change of Plea
10              Before the Honorable Steve C. Jones
                     United States District Judge
11


12
    Appearances:
13
            For the Government:    Kim Dammers
14                                 Assistant U. S. Attorney

15
            For the Defendant:     Drew Findling
16                                 Janice Singer-Capek
                                   Attorneys at Law
17

18

19

20

21
                     Lois D. Phillips, RMR, CRR
22                    Official Court Reporter
                    United States District Court
23                      U.S. District Court
                    Atlanta, Georgia  30303-3361
24                        (404) 215-1317
                    lois_phillips@gand.uscourts.gov
25
```

```
1                   P R O C E E D I N G S:

2              (Before Judge Jones on May 13, 2014)

3         THE COURT:  Good morning, everyone.

4         MR.  FINDLING:  Good morning, Your Honor.

5         MS. DAMMERS:  Good morning.

6         THE COURT:  Ms. Wright will call the case this morning.

7         THE CLERK:  Yes, sir.  The Court calls the United States

8  of America versus Radric Davis, 1:13-CR-456.

9         THE COURT:  Good morning.  Ms. Dammers, how are you

10 doing?

11        MS. DAMMERS:  Good morning, Your Honor.  How are you,

12 sir?

13        THE COURT:  Is the government ready to proceed?

14        MS. DAMMERS:  It is.

15        THE COURT:  And good morning, Mr. Findling,

16 Ms. Singer-Capek.  Is the defense ready to proceed?

17        MR.  FINDLING:  We are.

18        THE COURT:  And good morning, Mr. Davis.

19        Mr. Davis, if you will stand and raise your right hand?

20 Ms. Wright is going to administer the oath to you.

21                   RADRIC DAVIS, DEFENDANT,

22 upon being first duly sworn, was examined and testified as

23 follows:

24        THE COURT:  Ms. Dammers, I'm going to ask you all to

25 come to the podium and verify the signatures on the guilty plea
```

1    and plea agreement.

2              MS. DAMMERS:  Thank you, Your Honor.

3              Mr. Davis, I'm showing you what is entitled guilty plea

4    and plea agreement in this case.  It is a sixteen-page document.

5    Is it your understanding that this document contains the terms and

6    conditions, the contract between you and the United States

7    Attorney's office?

8              THE DEFENDANT:  Yes.

9              MS. DAMMERS:  And have you signed this document on pages

10   13 above your name and on page 14 which is entitled certification

11   of the defendant and counsel?

12             THE DEFENDANT:  Yes.

13             MS. DAMMERS:  And your attorneys have also signed this

14   document; is that correct, Ms. Singer-Capek?

15             MS. SINGER-CAPEK:  Yes.

16             MS. DAMMERS:  And you've also signed it on pages 13 and

17   15?

18             MS. SINGER-CAPEK:  Yes.

19             MS. DAMMERS:  And, Mr. Findling, you have also signed

20   this document?

21             MR.  FINDLING:  Yes.

22             MS. DAMMERS:  Your Honor, at this time the Government

23   tenders the guilty plea and plea agreement in this case.

24             THE COURT:  All right.  Thank you.

25

**EXAMINATION**

BY THE COURT:

Q.  Mr. Davis, before accepting your guilty plea there are a number of questions I must ask you to assure that it's a valid plea.  If you do not understand any of my questions please say so since it's essential to a valid plea that you understand each question before you answer.  Will you agree to do that, sir?

A.  Yes, sir.

Q.  Now, sir, you've just taken an oath to tell the truth.  Do you understand your answers to my questions will be subject to the penalties of perjury or making a false statement if you do not answer truthfully?

A.  Yes.

Q.  How old are you, sir?

A.  I am thirty-four.

Q.  And how far did you go in school, sir?

A.  Freshman year of college.

Q.  Did you have any problem reviewing the guilty plea and plea agreement with your attorneys?

A.  No, I didn't have no problems.

Q.  And you are a United States citizen?

A.  Yes.

Q.  Now, sir, have you taken any narcotic drugs, medicine, pills or drunk any alcoholic beverages in the past twenty-four hours?

A.  No.

```
 1           THE COURT:  Ms. Singer-Capek and Mr. Findling, do either
 2   one of you have any doubt as to the defendant's competence to
 3   plead guilty at this time?
 4           MS. SINGER-CAPEK:  No, sir.
 5           MR.  FINDLING:  No.
 6   BY THE COURT:
 7   Q.  By pleading guilty, Mr. Davis, you give up a number of rights
 8   you have under the Constitution and Laws of the United States.  I
 9   have a series of questions I must ask you to be sure that you
10   understand the rights that you are giving up by pleading guilty;
11   do you understand that, sir?
12   A.  Yes, I understand.
13   Q.  Do you understand under the Constitution and Laws of the
14   United States you have a right to plead not guilty, and maintain
15   your plea of not guilty to and through a trial by a jury?
16   A.  Yes, sir, I understand.
17   Q.  Do you understand you are entitled to a speedy and public
18   trial by a jury or judge on the charges contained in this
19   Indictment?
20   A.  Yes.
21   Q.  Do you understand you have a right to have an attorney assist
22   you throughout the trial?
23   A.  Yes, I do.
24   Q.  Do you understand at trial you would be presumed innocent, and
25   the Government would have to overcome that presumption and prove
```

```
 1  you guilty by competent evidence and beyond a reasonable doubt?
 2  A.  Yes.
 3  Q.  Do you understand you would not have to prove that you were
 4  innocent?
 5  A.  Yes, sir.
 6  Q.  Do you understand you have a right at trial to subpoena
 7  witnesses and compel their appearance here in court on your
 8  behalf?
 9  A.  Yes.
10  Q.  Do you understand during the course of the trial witnesses for
11  the Government would have to come to court and testify in your
12  presence?
13  A.  Yes, I understand.
14  Q.  Do you understand your counsel Ms. Singer-Capek and
15  Mr. Findling could cross-examine the witnesses for the Government,
16  object to evidence offered by the Government, and offer evidence
17  on your behalf?
18  A.  Yes, sir.
19  Q.  Do you understand also at trial you would have the right to
20  testify if you chose to do so, and you would also have the right
21  not to testify if you chose to do so?
22  A.  Yes, I understand.
23  Q.  Do you understand you have a right at trial to have the jury
24  render a unanimous verdict before you could be convicted?
25  A.  Yes, Your Honor.
```

1  Q.  Do you understand you have a right to have the jury determine

2  all of the evidence of the offense charged against you by proof

3  beyond a reasonable doubt?

4  A.  Yes.

5  Q.  If I accept your plea do you understand you will waive your

6  right to a trial?

7  A.  Yes.

8  Q.  Do you understand there will be no trial, and I will simply

9  enter a judgment of guilty and sentence you on the basis your

10  guilty plea?

11  A.  Yes.

12  Q.  By pleading guilty do you understand you will also have to

13  waive your right not to incriminate yourself since I would have to

14  ask you questions about what you did in order to satisfy myself

15  that you are guilty as charged, and you would also have to admit

16  your guilt?

17  A.  Yes.

18  Q.  Are you willing to waive and give up your right to a trial and

19  other rights I just discussed with you?

20  A.  Yes.

21  Q.  Has anyone use any force, threat of force or in any way in

22  order to get you to enter this plea of guilty?

23  A.  No.

24  Q.  Has anybody -- are you entering this plea of guilty freely and

25  voluntarily?

1  A.  Yes, I am.

2          THE COURT:  At this time I ask Ms. Dammers, the

3  Assistant United States Attorney, to summarize the terms of any

4  plea agreement.

5          MS. DAMMERS:  Thank you, Your Honor.

6          Your Honor, under the written plea agreement the

7  defendant is pleading guilty pursuant to Rule 11(c)1(C), it's a

8  binding plea if the Court were accept the plea as written.  And in

9  Section 1 of the written plea agreement the defendant admits he's

10 pleading guilty because he is in fact guilty of the crime charged

11 in Count 1 of the Indictment against him.

12         Section 2 outlines the rights the defendant is giving up

13 by pleading guilty and foregoing a trial, and it is those rights

14 that the Court has already outlined with the defendant and

15 generally would require the Government to prove the defendant's

16 guilt beyond a reasonable doubt in front of a jury.

17         Section 3 outlines the possible penalties that the

18 defendant is facing.  And under the Count 1, which charges 18 USC

19 922(G)(1) felon in possession, there is a possible maximum term of

20 imprisonment of ten years, there is no mandatory minimum term of

21 imprisonment, there is a term of supervised release of up to three

22 years, a maximum fine of up to $250,000, there is a special

23 assessment of one hundred dollars, there would be forfeiture and

24 there is a forfeiture provision in the plea agreement, and there

25 would be restitution, which I do not think is applicable in this

1  particular case.

2          The defendant understands that before imposing sentence

3  in his case that the Court will be considering the United States

4  Sentencing Guidelines, and that under normal circumstances it has

5  the discretion to depart from those guidelines.  In this case

6  because it's 11(c)1(C), the Court will be looking at the

7  guidelines against the party's recommendation to the Court.

8          Paragraph 9 is the binding sentencing recommendation,

9  and it says that as a product of the negotiation between the

10 parties and in exchange for the Government dismissing Count 2 of

11 the Indictment, the Government expressly recommends as a defendant

12 that the Court impose a sentence of 39 months as the appropriate

13 custodial sentence in this case.

14         Under the provisions of federal criminal procedure

15 Rule 11(c)1(C) this recommendation would bind the Court and impose

16 that sentence if the Court accepts the written plea agreement

17 before sentencing.

18         The Government agrees at sentencing that it will dismiss

19 any remaining counts, which is Count 2, against the defendant, and

20 that it will not bring any other additional charges in

21 Paragraph 12 related to this offense.

22         Paragraph 13, the Government will agree that the

23 defendant should obtain the maximum acceptance of responsibility

24 points in this case, which I think would be three.

25         In Paragraph 14 the Government preserves its right to

1  correct anything that it considers to be a misstatement of law or

2  fact to the Court or probation officer during sentencing.

3         In Paragraph 15, if the Government learns anything about

4  the defendant that it didn't already know that would negate these

5  recommendations, it reserves its right until sentencing to correct

6  those, and to make a contrary or different recommendation.

7         Paragraph 16, the defendant acknowledges that the items

8  listed below were going to be forfeited, and that's the firearm in

9  Count 1, which is a Glock .40 caliber handgun with a certain

10 serial number and eleven rounds of ammunition.

11        The defendant also voluntarily agrees to give up any

12 right he has in a Taurus .45 caliber handgun with a serial number

13 and eight rounds of .45 caliber ammunition that was the subject of

14 Count 2, the dismissed count.

15        I will state for the Court that the defendant does not

16 claim any right to these firearms that he possessed, in Count 1 or

17 the one that he is voluntarily giving up for Count 2.  However,

18 there is other people who said he did own them.  So in abundance

19 of caution -- and they may in fact already have been

20 administratively forfeited -- but in an abundance of caution and

21 to the extent that he owns those, the defendant is forfeiting

22 those rights.

23        THE COURT:  All right.

24        MS. DAMMERS:  The defendant agrees in Paragraph 22 that

25 he will pay a special assessment of one hundred dollars, that

1  should the Court impose a fine in his case or restitution, the

2  defendant understands that that fine would be due and payable

3  immediately.  And that if he lacked the resources to pay that

4  fine, he could form a payment schedule would be imposed upon him.

5           Paragraph 24 is a limited waiver of appeal, and it

6  states to the maximum extent permitted by federal law the

7  defendant voluntarily and expressly waives the right to appeal his

8  conviction and his sentence and the right to collaterally attack

9  his conviction and sentence in any post-conviction proceeding,

10 including but not limited to a habeas corpus petition.

11          The defendant understands this does not limit the

12 Government's right to appeal, but if the Government initiates a

13 direct appeal, the defendant would be allowed to cross appeal.  So

14 that's the only exception.

15          THE COURT:  Yes.

16          MS. DAMMERS:  Paragraph 25, the defendant waives his

17 right to obtain information under the Freedom of Information Act

18 or the Privacy Act.

19          He also waives his right in Paragraph 26 to challenge

20 prior convictions.

21          And in Paragraph 27 the defendant agrees that there are

22 no other agreements, promises, representations or understandings

23 between he and the Government.

24          THE COURT:  Thank you, Ms. Dammers.

25          MS. DAMMERS:  Thank you.

```
1   BY THE COURT:
2   Q.  Mr. Davis, you heard Ms. Dammers outline and disclose the
3   terms and conditions of the plea agreement entered into by the
4   Government and your attorneys.  Do you agree with the description
5   of the plea agreement?
6   A.  Do I agree with it?
7   Q.  Yes.
8   A.  Yes.
9   Q.  Now, is this the only agreement you've entered into with
10  Government?
11  A.  Yes.
12  Q.  Has anyone made any promise other than the plea agreement to
13  induce you to plead guilty here today?
14  A.  No.
15  Q.  Has anyone made a promise to you as to what your actual
16  sentence will be in this case?
17  A.  No.
18  Q.  Now, you heard Ms. Dammers outline the maximum penalty and
19  fine that can be imposed on this charge.  Do you understand that?
20  A.  Do I understand the assessment and the fee?  Yes.
21  Q.  Well, the sentence that you could receive in this case?
22  A.  39 months?
23  Q.  Yeah?
24  A.  Yes, sir.  I'm sorry.
25  Q.  All right.
```

1          THE COURT:  Let me ask counsel, have you all advised the

2    defendant concerning the legality of any statements or confessions

3    or other evidence the Government has against him?  I just need one

4    of you all.

5          MS. SINGER-CAPEK:  Yes.

6          MR.  FINDLING:  Yes.

7          THE COURT:  Is the defendant pleading guilty because of

8    any illegally obtained evidence in the possession of the

9    Government?

10          MR.  FINDLING:  No.

11          THE COURT:  Has the defendant told you anything about

12    medications, pills, drugs, alcohol or other factors that might be

13    affecting him today?

14          MR.  FINDLING:  No.

15          THE COURT:  Are you aware of any?

16          MR.  FINDLING:  No.

17          THE COURT:  Have you made any promise to the defendant

18    of a particular sentence in the event of a plea of guilty here

19    today?

20          MR. FINDLING:  No, Your Honor.

21          THE COURT:  Have you made any promise to the defendant

22    of the amount of credit he will receive for time he may have spent

23    in federal or state custody?

24          MR.  FINDLING:  Well, other than what has been agreed

25    upon regarding him receiving credit for time served since the time

1   of his being in custody, which we can address at the tail end of

2   the plea.

3            THE COURT:  Okay.

4            MS. DAMMERS:  Your Honor, can I just interject?  While

5   Mr. Findling says he hasn't promised him anything.  In fact

6   because this is a binding plea, I think there is an expectation

7   and a promise that if the Court were to accept this plea he would

8   get 39 months.

9            THE COURT:  Yeah.

10            MS. DAMMERS:  So I just wanted --

11            MR.  FINDLING:  That's correct.

12            THE COURT:  As far as any credit for time served in

13   federal or state custody, have you made any promise to him that he

14   receive credit for that?

15            MS. DAMMERS:  Your Honor, he should receive credit from

16   the Bureau of Prisons guidelines, it's for the same offense, so I

17   believe that he should receive credit from the date of his arrest.

18            THE COURT:  He understands, though, the first initial

19   people to decide whether he would receive credit or not is the

20   Bureau of Prisons.  If there is ana disagreement, there is a

21   process that comes back to the Court.

22            MR.  FINDLING:  He understands that, Your Honor.

23            THE COURT:  Do you have any knowledge of any plea

24   agreement or bargain affecting this plea being tendered in this

25   case other than what's been discussed in open court?

1          MR.  FINDLING:  No, sir.

2          THE COURT:  Do you know of any reason why this Court

3   should not accept this plea of guilty today?

4          MR.  FINDLING:  No, sir.

5          THE COURT:  Have you had sufficient time to discuss this

6   matter fully with your client prior to his entry of a plea of

7   guilty here today?

8          MR. FINDLING:  We have.

9          THE COURT:  Thank you all.

10  BY THE COURT:

11  Q.  Mr. Davis, do you feel you've had sufficient time to think

12  about and discuss this matter fully with your attorneys before

13  entering a plea of guilty here today?

14  A.  Yes.

15  Q.  Are you satisfied with the representation of your lawyer in

16  this case?  Or lawyers in this case?

17  A.  Yes, Your Honor.

18          THE COURT:  At this time I'm going to ask Ms. Dammers to

19  state the elements of the offense alleged in the Indictment to

20  which the defendant is pleading guilty.

21          MS. DAMMERS:  Yes, Your Honor.

22          Your Honor, the Government has to prove beyond a

23  reasonable doubt that on or about the date listed in the

24  Indictment, which is September 14th, 2013, the defendant possessed

25  a firearm, and that at the time he possessed that firearm he was a

1  felon, meaning that he had -- he had been convicted of a crime

2  punishable by more than a year in prison.  And the Government

3  would also have to prove venue, that it had occurred in the

4  Northern District of Georgia, and that the firearm had moved in or

5  affected interstate commerce.

6  BY THE COURT:

7  Q.  All right.  Now, Mr. Davis, have you discussed with your

8  attorneys the charge in the Indictment to which you intend to

9  plead guilty?

10 A.  Yes.

11 Q.  Do you understand what you are charged with?

12 A.  Yes.

13 Q.  In your own words tell me what you understand you are charged

14 with?

15 A.  I'm charged with one count of convicted felon with a firearm.

16 Q.  I just want to make sure you understand one thing.  Do you

17 understand the maximum penalty for this Count 1 is ten years

18 imprisonment?

19 A.  Yes, I understand.

20 Q.  And that the term of supervised release is up to three years?

21 A.  Yes.

22 Q.  Do you have any questions about that?

23 A.  No, sir.

24      THE COURT:  And, Mr. Findling, Ms. Singer-Capek, do you

25 all agree for Count 1 that's the maximum penalty that can be

1   imposed?

2           MR.   FINDLING:   We do.   And we have communicated that to

3   the defendant.

4   BY THE COURT:

5   Q.   Mr. Davis, even though Ms. Dammers has indicated that she does

6   not believe restitution will be involved in this case, I have a

7   responsibility to just to tell you about it just in case the

8   presentence report comes back otherwise.

9           Do you know that you may be ordered to make restitution

10  to any victim of the offense in this case, even though I don't

11  anticipate that happening, but you understand all possibilities

12  are possible?

13  A.   Yes.

14  Q.   Have you discussed or talked with your attorneys about the

15  Sentencing Commission Guidelines and how it might apply to your

16  case?

17  A.   The sentencing guidelines apply to my case with the binding

18  plea still?

19  Q.   Have you talked to your attorneys about the Sentencing

20  Commission and how the guidelines might apply to your case?

21  A.   Yes, sir.

22  Q.   Do you understand it is not possible to determine the

23  guidelines for your case until and after the presentence report

24  has been completed and you and the Government have had the

25  opportunity to challenge the facts reported by the probation

1  officer in the presentence report?

2  A.  Yes, I understand.

3  Q.  Now do you understand the Government has entered into a

4  binding agreement to a sentence of 39 months and in exchange for

5  your agreement to plead guilty in this case?

6  A.  Yes, Your Honor.

7  Q.  If I agree to accept this binding plea I will sentence you to

8  a term of prison of 39 months; do you understand that?

9  A.  Yes, sir.

10  Q.  I am informed by your attorneys and the Government attorneys

11  that I would defer acceptance of be 39 months binding sentence

12  until I receive the presentence report?

13  A.  Yes, sir.

14  Q.  After reviewing the presentence report if I decide to reject

15  the 39-months binding agreement, I will allow you to withdraw your

16  plea of guilty and proceed to trial based on your prior not guilty

17  plea; do you understand that?

18  A.  Yes.

19  Q.  If I decide to accept the binding plea I will sentence you to

20  a term of 39 months imprisonment?

21  A.  Yes, sir, I understand.

22  Q.  Now, sir, do you also understand under certain circumstances

23  you or the Government may have the right to appeal any sentence I

24  may impose?

25  A.  I may have a right to appeal?

Q.  Yes.  You or the Government under the terms based on your

agreement -- you and the Government may appeal any sentence I may

impose?

A.  Yes, I understand.

Q.  Now, do you understand as part of your plea agreement you are

giving up your right to appeal your sentence unless there is an

upward departure from the guidelines or an appeal by the

Government?

A.  Yes, I understand.

Q.  Do you also understand you are giving up your right to

collaterally attack your conviction and sentence in any

post-conviction proceeding?

A.  Yes, I understand.

Q.  Has anyone used any force, threat of force in order to get you

to give up your right to appeal your sentence and conviction?

A.  No, Your Honor.

Q.  Other than the plea agreement has anyone made any promise to

you that caused you to give up your right to appeal your sentence

or conviction?

A.  No.

Q.  Are you doing this freely and voluntarily?

A.  Yes.

Q.  Now, sir, you understand that parole has been abolished.  And

if you are sentenced to prison you will not be released on early

parole?

1  A.  I understand.

2  Q.  Do you also understand you may be sentenced to a term of

3  supervised release, and if you violate the conditions of release

4  you can be sent back to prison for the entire term of supervised

5  release?

6  A.  Yes.

7          THE COURT:  At this time I ask Ms. Dammers to summarize

8  what the evidence would show, and I will then ask you whether you

9  agree or disagree with what she says.

10          MS. DAMMERS:  Your Honor, if this case were to go to

11  trial the Government would expect to show beyond a reasonable

12  doubt through the testimony of eye witnesses and law enforcement

13  officers that on or about September 14th, 2013, Mr. Davis was in

14  DeKalb County, and -- that I'm sorry he was in Fulton County, and

15  on that date the Atlanta Police Department got a phone call from a

16  concerned citizen who knew Mr. Davis, knew him by sight, knew him

17  by name, and said that Mr. Davis was out on the street and that he

18  had -- he was acting violently and that he had a gun.

19          Police responded to that call.  In fact, they found

20  Mr. Davis on the street walking around.  According to the police

21  report and police officers they would testify that Mr. Davis

22  smelled strongly of marijuana and that he had -- and was waiving a

23  .40 caliber handgun while he was walking around the streets.

24          When they approached him he made threats, rather vague

25  threats, but threats to the police officers.  The police officers

1   arrested Mr. Davis.  They found obviously in his possession the

2   handgun that he was carrying, and they called paramedics then to

3   both deal with him because he seemed agitated, but also to make

4   sure he was okay.  He was transported to Grady, and then he was

5   brought into police custody subsequent to that.

6        The Government would show through the testimony of ATF

7   experts that the firearm that he was carrying, which was a

8   .40 caliber Glock handgun, which as was loaded with eleven rounds

9   of ammunition, that that firearm was manufactured outside of the

10  State of Georgia and that the ammunition was also manufactured

11  outside of the State of Georgia.

12       The Government would also show that at the time that the

13  defendant possessed that firearm he had been previously been

14  convicted of an offense that was punishable by a term of

15  imprisonment for more than one year.

16       THE COURT:  Ms. Singer-Capek

17       MR.  FINDLING:  We just --

18       MS. SINGER-CAPEK:  Yes.  Just wanted to -- go ahead.

19       MR.  FINDLING:  Yeah, yeah.

20       We would add to that, we agree with the statement of

21  facts with just a couple of addendums, and that would be according

22  to the police reports we have reviewed that he was acting

23  erratically at the time causing the police to bring him to Grady,

24  not for a physical checkup, but for a psychiatric checkup.  In

25  fact, he was intravenously treated at the time to bring him out of

```
 1   this -- his erratic behavior.  And in fact it was some back and
 2   forth to some other mental health facilities during that period of
 3   time, not negating the fact that he did possess the firearm while
 4   a convicted felon, but nevertheless, we have discussed this with
 5   the Court before.  We want to make sure that the record is very,
 6   very clear that it was a very big part of what transpired at the
 7   time.
 8            THE COURT:  It's my understanding that he's not denying
 9   that he knew that he had this .40 Glock and the eleven rounds of
10   ammunition, and it was his intent to have it.
11            MR.  FINDLING:  Correct, Your Honor.
12            MS. SINGER-CAPEK:  And all I would just add is that it's
13   just my understanding was he was erratic more than -- he was
14   erratic, not acting violently, but erratically, in that he they
15   were vague threats, not --
16            MS. DAMMERS:  Your Honor, I would agree they were vague
17   threats.  I think I said that in the recitation of facts.  I'm not
18   sure that waiving a handgun is violent or erratic, we would leave
19   that up to the jury to decide, but I don't think either definition
20   would negate any of the elements of this offense.
21            THE COURT:  It's the Court's understanding that
22   Mr. Davis had a .40 Glock weapon, eleven rounds of ammunition,
23   that he was acting erratically with it, but he was not directly
24   threatening anyone with the weapon.
25            MR.  FINDLING:  Your Honor, that's the best way of
```

1  putting it.  Hence, he was charged with possession of firearm by a

2  convicted felon, and we're taking a plea.  He wasn't charged with

3  any other offense federally that would result from his behavior

4  because everyone understood the state he was in at the time.

5          THE COURT:  That's the way I'm accepting it.

6          MR.  FINDLING:  I concur with the Court.  Thank you.

7          MS. DAMMERS:  I'm sorry, I was having a side discussion.

8          MS. SINGER-CAPEK:  I'm sorry.

9          MS. DAMMERS:  That was my fault.

10          THE COURT:  It's the Court's understanding basically

11  what he's being charged with and what he's entering a plea of

12  guilty to, he was a convicted felon, received more than one year

13  in confinement, he had a .40 Glock weapon, eleven rounds of

14  ammunition, he intended to have it, he knew he had the weapon.  He

15  was acting erratically, but at no point in time was he threatening

16  anyone with the weapon.

17          MS. DAMMERS:  That's correct.  I think the threats were

18  vague, but not directly toward the witness.

19  BY THE COURT:

20  Q.  Mr. Davis, you heard the summary coming from the Assistant

21  United States Attorney and you heard what the Court has said.  Do

22  you agree with what the Assistant United States Attorney is saying

23  the evidence would show if this case went to trial?  Do you agree?

24  You heard Ms. Dammers summarize what the evidence would show if

25  this case went to trial?

1    A.   Yes.

2    Q.   Do you agree with that?

3    A.   Yes, sir, I agree.

4    Q.   Are you in fact guilty as alleged in Count 1 of the

5    Indictment?

6    A.   Yes.

7              THE COURT:   The Court finds there is factual basis for

8    the plea of guilty.

9    BY THE COURT:

10   Q.   Now, Mr. Davis, it's been a lot been said this morning, a lot

11   of questions been asked you this morning.   Is there anything that

12   the Court has asked you or said to you that you wish for me to

13   clarify?

14   A.   I totally understand everything.

15   Q.   One thing I'd like to add on the penalty portion, I forgot to

16   add the maximum fine is $250,000, and a hundred dollars special

17   assessment, which Ms. Dammers pointed out.   Do you understand

18   that?

19   A.   Yes, sir.

20   Q.   Is there anything your attorneys have said that you disagree

21   with during the course of this hearing?

22   A.   No, sir.

23             THE COURT:   At this time the Court finds the defendant

24   understands the charges and the consequences of his plea of

25   guilty.   I have observed the defendant during this proceeding, he

```
 1  does not appear to be under the influence of any substance that
 2  might affect his judgment or actions in any manner.  The Court
 3  finds that the offer of the plea of guilty to Count 1 of the
 4  Indictment has a factual basis, is free of any coercive influence
 5  of any kind, is voluntarily made with full knowledge of the charge
 6  against him and the consequence of his plea.
 7           I further find that the defendant is competent to
 8  understand these proceedings and to enter a knowing plea of
 9  guilty.  I find that there has been no promises of any kind made
10  to him by anyone except as incorporated in the plea agreement as
11  set out here in open court.
12           It is hereby ordered that the plea of guilty of the
13  defendant to Count 1 of the Indictment is accepted and entered.
14           Mr. Davis, you are hereby adjudged guilty of Count 1 of
15  the Indictment, and Ms. Wright will now give you all a sentencing
16  date.
17           THE CLERK:  Yes, sir.  Sentence is set for July 28th at
18  11:30.
19           THE COURT:  July 28th.  Anything else, Mr. Findling,
20  Ms. Singer-Capek?
21           MR.  FINDLING:  No, Your Honor.
22           THE COURT:  Anything else, Ms. Dammers?
23           MS. DAMMERS:  No, Your Honor.  Thank you.
24           THE COURT:  Thank you all.
25           (Proceedings adjourned)
```

```
 1                        C-E-R-T-I-F-I-C-A-T-E

 2

 3

 4

 5   UNITED STATES DISTRICT COURT

 6   NORTHERN DISTRICT OF GEORGIA

 7

 8       I, Lois D. Phillips, Official Court Reporter of the United

 9   States District Court for the Northern District of Georgia, do

10   hereby certify that the foregoing pages inclusive, constitute a

11   true transcript of the proceedings had before the said court held

12   in the City of Atlanta, Georgia, in the matter therein stated.

13

14       In testimony whereof I have hereunto set my hand on this

15   16th day of July, 2014.

16

17

18

19

20                    _____

21                       Lois D. Phillips, RMR, CRR

22                        Official Court Reporter

23                      Northern District of Georgia

24

25
```