```
 1                United States District Court
                  Northern District of Georgia
 2                      Atlanta Division

 3

 4  United States of America,      )     Case No.
                                   )     1:13-CR-456-SCJ
 5         Plaintiff,              )
                                   )
 6         V.                      )
                                   )
 7  Radric Davis,                  )     Atlanta, Georgia
                                   )     August 20, 2014
 8         Defendant.              )

 9

10              Transcript of Sentencing Hearing
                Before the Honorable Steve C. Jones
11                 United States District Judge

12

13  Appearances:

14       For the Government:    Kim Dammers
                                Assistant U. S. Attorney
15

16       For the Defendant:    Drew Findling
                                Janice A. Singer-Capek
17                              Attorney at Law

18

19

20

21

22
                     Lois D. Phillips, RMR, CRR
23                    Official Court Reporter
                  United States District Court
24                      P.O. Box 98086
                     Atlanta, Georgia  30359
25                      (404) 966-0330
                   loisphillips@mindspring.com
```

```
 1                  P R O C E E D I N G S:

 2              (Before Judge Jones on August 20, 2014)

 3              THE COURT:  Good morning, everyone.

 4              I understand we have a sentence this morning.

 5  Ms. Wright will call the case.

 6              THE CLERK:  Yes, sir.

 7              The Court calls the United States of America versus

 8  Radric Davis, Criminal Case No. 1:13-CR-456.

 9              THE COURT:  Good morning, Ms. Dammers.

10              MS. DAMMERS:  Good morning.  Kim Dammers for the United

11  States.

12              THE COURT:  Is the Government is ready to proceed?

13              MS. DAMMERS:  It is ready, Your Honor.

14              MR. FINDLING:  Your Honor, Drew Findling and

15  Janice Singer-Capek with Mr. Radric Davis, ready to proceed.

16              THE COURT:  Good morning.

17              Mr. Davis, have you reviewed the presentence report with

18  your attorneys in the case?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  You can be seated back down.

21              At this time the Court will announce the advisory base

22  offense level for this case is a 20.  Okay.  We have an adjusted

23  offense level of 20, acceptance of responsibility a three-level

24  reduction, giving a total offense level of 17.

25              In reading the presentence report, Ms. Dammers, it's my
```

1  understanding the Government will be recommending one-level

2  reduction for judicial economy?

3          MS. DAMMERS:  Your Honor, the Government is offering one

4  for acceptance of responsibility, not the fourth point, which is

5  commonly referred to as the fourth point.

6          THE COURT:  In that case we have a total offense level

7  of 17, criminal history category of four, custody guideline range

8  of 37 to 46 months, a fine guideline range of 5,000 to $50,000,

9  and a term of supervised release is one to three years.

10         The Court will adopt the facts in the presentence report

11  to which no objection has been made as the findings of this Court.

12  It's my understanding there are no objections coming from the

13  prosecution, the Government, regarding the guidelines.

14         MS. DAMMERS:  That's correct, Your Honor.

15         THE COURT:  And no objections, Mr. Findling,

16  Ms. Singer-Capek, regarding the guidelines coming from the

17  defendant?

18         MR. FINDLING:  That's correct.

19         MS. SINGER-CAPEK:  That's correct, Your Honor.

20         THE COURT:  At this time the Court will review the

21  sentencing options.

22         This is a possession of firearm by a convicted felon

23  under 18 USC 922(G)(1), statutory penalty is ten years and

24  $250,000 fine.  There is no mandatory minimum.  I have already

25  announced the offense level and criminal history category and

1  custody guideline and fine guideline range.  Special assessment of

2  a hundred dollars, forfeiture is involved in this case.  Cost of

3  confinement is $29,291.62 annually, cost of supervision is

4  $3,162.30 annually.  Supervised release again is one to three

5  years, and Mr. Davis is a United States citizen.

6         Now, the Court understands this was being offered as a

7  binding plea in this matter of 39 months.  The Court has reviewed

8  this presentence report in this case and looked at all matters in

9  this case, and before we get to the attorneys and the Government

10  on their comments on the sentence, the Court would like to let you

11  all know that I have already made the decision that I will accept

12  the binding plea of 39-months confinement.  But if you all want to

13  say anything else or present anything else at this time, I will

14  hear from you.

15         MS. DAMMERS:  Your Honor, I would like to address the

16  3553(a) factors on the record, if I might.

17         THE COURT:  Let me add, the Court takes into

18  consideration the 3553(a) factors in this matter.

19         MS. DAMMERS:  Your Honor, the Government entered into a

20  binding plea agreement with Mr. Davis and his counsel.  We --

21  counsel believes that this would fall within the guideline range,

22  which in fact it does.  And it was represented that a binding plea

23  would help Mr. Davis understand, which is sometimes difficult for

24  federal defendants, the certainty of it, it is not certain at

25  times.

 1            Nonetheless, the Government thinks that this is in fact

 2  a just sentence.  Mr. Davis has a substantial history of violence

 3  in the past.  He has an aggravated assault in 2005 that's in

 4  Paragraph 29 in the presentence report, a battery that was also a

 5  probation --

 6            THE COURT:  I saw that.

 7            MS. DAMMERS:  -- on paragraph 33, he has ag-assault

 8  pending on Paragraph 38.

 9            THE COURT:  I saw that.

10            MS. DAMMERS:  And of course there was the murder in

11  DeKalb County that he was charged with, but was never brought to

12  an indictment.  And then there was also a battery in Henry County

13  where the victims were -- reading between the lines you could

14  fairly say --

15            THE COURT:  Violence.

16            MS. DAMMERS:  The victims were unwilling to come

17  forward.

18            So given that, the Government was not willing to enter

19  into a low end of the guideline range.  It's only two months

20  difference.  It was more principle, a matter of principle than

21  anything, but 39 months I think is a significant enough sentence

22  for Mr. Davis to understand the seriousness of the offense.

23            The fact that he is known and has routinely had firearms

24  in his possession, notwithstanding that he is a felon, that he

25  makes threats against individuals, the Government is dismissing

1  the count in which -- the first count of the Indictment, the other

2  count of the Indictment, I guess I should say.

3          THE COURT:  He's pleading to Count 1.

4          MS. DAMMERS:  Yeah, I think you are right -- Count 2 of

5  the Indictment, which alleges similar conduct.  Given all of that

6  and the fact of the threat to the community, I think a 39-month

7  sentence is in fact just.

8          THE COURT:  Okay.  Thank you.

9          MS. DAMMERS:  I'm sorry, let me say one other thing:

10         It is rare when I even mention fines in a felon in

11 possession case, but Mr. Davis has some means and a fine -- if it

12 was certainly within the Court's discretion to impose a fine in

13 this case -- and the Government would not object to a fine being

14 imposed.

15         THE COURT:  Thank you, Ms. Dammers.

16         Mr. Findling, Ms. Singer-Capek?

17         MR. FINDLING:  Your Honor, real quickly, with reference

18 to the 3553 factors, we were candid with the Court and counsel for

19 the Government when entering into the somewhat uniqueness of

20 11(c), it is not something we see every day, and there is sort of

21 a global nature to the resolution of this.  He will be resolving

22 some other matters, as well.  But clearly -- and when we ask for

23 designation later -- Mr. Davis understands the seriousness of

24 these acts.  There were certain promises we made in terms of

25 making sure that probation had certain documents we would furnish

1  regarding mental health issues.  We furnished all of that.  I

2  think that was all taken into consideration in reaching this

3  sentence, and I just want the Court to be assured that Mr. Davis

4  is well aware of the seriousness of the offense, and has,

5  therefore, acquiesced to the sentence that Your Honor has

6  indicated you will accept.

7          THE COURT:  Okay.

8          MS. SINGER-CAPEK:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10          MS. SINGER-CAPEK:  Or afternoon.

11          THE COURT:  Still morning.

12          MS. SINGER-CAPEK:  Almost.

13          Your Honor, there is only one additional matter, and

14  it's really a reminder about -- and it would be just as to the

15  language in the presentence report as was stated at the time of

16  Mr. Davis's plea, it was anticipated that he would get credit on

17  his sentence from the time of his arrest on September 14th.  That

18  September 14th arrest, that -- okay, this is not working right.

19          That September 14th arrest resulted in new charges in

20  DeKalb County for the offense to which he pled, and also resulted

21  in the state court revoking probation.  So he had a probation

22  revocation, as well, and that's all been resolved and done.

23  They've released the hold.  I've spoken to DeKalb and the Marshals

24  office and acknowledging and to confirm that that had been taken

25  care of.  But it was anticipated and it was said at the time of

1    the plea that he would get credit.

2          And because of that time was a probation revocation --

3    he was revoked in the State Court because of this conduct.  And in

4    fact if you look at the presentence report, he got additional

5    history -- an additional criminal history point because of that

6    probation revocation, but that we would want language put in the

7    presentence report that he gets 39 months, that it's anticipated

8    that -- that he is to get credit from September 14th for the

9    eleven months that he has served.

10          THE COURT:  That decision is usually made by the Bureau

11    of Prisons on how much credit he receives.  The wording -- tell me

12    again the wording that you wanted.

13          MS. SINGER-CAPEK:  Well, I didn't actually say the

14    wording yet.  I had wording, but I had spoken to Ms. Dammers about

15    it, and I knew she did not -- because I had it that you would give

16    him a net sentence of 28 months, but I know I'm not doing that.

17    So, but it would be -- he has already served 11 months, and I

18    understand that.  But we said at the time of the plea we

19    anticipated that he would get credit for all of the time he's been

20    in DeKalb.  So I would propose language, and I would write it up

21    and run it by the Court and Ms. Dammers that he get -- that one,

22    that the Judge, you, when you entered the sentence that you order

23    that he gets 39 months incarceration with credit for time served

24    from September 14th pursuant to United States Sentencing Guideline

25    5G1.3(C), which gives you the right to do that because the Bureau

1  of Prisons is not going to compute this right.

2          We've had enough issues.  His GCIC does not even show

3  his arrest in DeKalb.  They only show the probation revocation.

4  So according to the GCIC, the only reason he was in custody in

5  DeKalb was because of the revocation, which is not correct.  He

6  was in custody in DeKalb because there was a case.  I have spoken

7  to the prosecutors.  Ms. Oswald, I've sent her all the paperwork

8  because it wasn't reported correctly.

9          So I -- I would like to say I have faith that the Bureau

10  of Prisons will compute this correctly, but I don't.

11          THE COURT:  Well, they are not the final word.  If they

12  don't, if you disagree with what -- how they compute it, then you

13  do have a remedy to bring it back to me.

14          MS. SINGER-CAPEK:  I don't know that I do.

15          THE COURT:  I think you do.

16          MS. DAMMERS:  I agree with that, Your Honor.

17          MS. SINGER-CAPEK:  But what I would request is that

18  Your Honor put in the sentence that he gets 39 months, and that he

19  gets credit for time served from September 14th forward, including

20  credit for the time that he was on the probation revocation.

21          THE COURT:  I don't know if I can agree to that.

22          Let me hear from the Government.

23          MS. DAMMERS:  Your Honor, I don't object.  He was

24  arrested on September 26th, 2013 --

25          MR. FINDLING:  '14.

1        MS. DAMMERS:  2014 hasn't happened yet.  So 2013.  About

2   a year ago.  About a year ago he was arrested in connection with

3   this offense.  Normally that time then would run from the date of

4   his -- the date of his State arrest, because it's all the same

5   offense.

6        THE COURT:  I'm not disagreeing with what time you are

7   saying.  I'm just saying that I think the procedure we are kind of

8   getting down --

9        MS. DAMMERS:  I agree with that.  And I also agree --

10  and I disagree with that 5G1.3.3.

11       MS. SINGER-CAPEK:  (C).

12       MS. DAMMERS:  (C) controls.  That's an undischarged term

13  of imprisonment, and I'm not sure that's what we're talking about.

14  I don't object to the Court saying the time should run from

15  September 26, 2013.  I do think, however, it's up to the Bureau of

16  Prisons how they do that.

17       THE COURT: That's my understanding from reading the law

18  is that the Bureau of Prisons get to make that determination.  If

19  you all disagree with what they say, then you have a remedy to

20  bring it back to me, and I have the final word.  I've dealt with

21  this before, that's the way I did it before.

22       MS. SINGER-CAPEK:  I guess I've never seen where we

23  actually can get back in front of you in that way when you've got

24  Rule 35, but we've waived a 2255.

25       THE COURT:  My understanding of the law -- I've dealt

1   with this before -- is that the Bureau of Prisons -- if you

2   disagree with the Bureau of Prisons saying what the proper

3   calculation is, it comes back to me.

4          Here is what I will do.  You can send me the language

5   that you propose, but I'm not making a commitment I'm going to use

6   that language.  I might say, the Court acknowledges or that he was

7   in confinement during these times, but I'm also going to add other

8   language to it.  What I'm saying is I will look at it.  I'm not

9   promising I will use the exact words you all give me.

10          MS. SINGER-CAPEK:  Thank you.

11          If it will help I will provide some law to the Court as

12   to why it should be done at this point.

13          THE COURT:  You can do that.  Again, I want to make sure

14   everybody understands what I am saying.  I am saying I am not

15   committing to anything.  I am saying I will look at it.  I might

16   use it, I might not.  Or I might use entire language I want to

17   use.  I might agree with your law.  I may not agree with the law

18   you submitted.  I've looked at this before in another case.

19          I feel quite confident the procedure is that the Bureau

20   of Prisons looks at it, if you all disagree with the Bureau of

21   Prisons, then you all have the right to bring it back to me and I

22   make the determination then.  But I will look at what you submit.

23          MS. SINGER-CAPEK:  And that's fine.  It's just -- and I

24   guess I can provide it to the Court, but the binding plea was also

25   predicated on the fact that he got credit for time served, and

1    that was said by Ms. Dammers at the time of the plea.  I did not

2    bring the transcript with me, but that was what one of the reasons

3    that the binding plea, as well.  As Ms. Dammers stated, but it was

4    also we anticipated that credit.

5           MS. DAMMERS:  Your Honor, I don't -- I think there is

6    two things.  I think defense counsel is conflating those.  We did,

7    I believe, state that we anticipated that he would get credit from

8    September 26, 2013, when he was arrested on the State charge.

9    That is true.

10          We also said that there were no binding -- no agreements

11   outside of this written plea agreement, and it is not part of this

12   written plea agreement.  Just now defense counsel said, the

13   parties agreed that it would be anticipated.  Clearly it's a

14   Bureau of Prisons issue.  I have had it where it can come back and

15   the judge has looked at it afterward.  I don't object to that

16   language.

17          THE COURT:  Well, here is what I'm telling to you all.

18   Advisory offense level is, custody guideline range is 37 to 46

19   months.  The binding plea that was offered to the Court was 39

20   months.  The Court, after looking at the 3553(a) factors, the

21   seriousness of the offense, the terms, the history of the

22   defendant, and the presentence report, is willing to accept the

23   binding plea of 39-months confinement.

24          Now, if you all are saying that the Court also has to be

25   bound by these other matters, I'm not going to commit to that.  We

1  can -- I will allow you to withdraw your plea of guilty,

2  Mr. Davis, keep your plea of not guilty, and we'll set it for

3  trial.  I'll take it -- it's ten minutes to 12:00.  I will be back

4  here at 12:00.  If you all want to go forward, we'll go forward.

5  If not, we'll give you a trial date.

6          MS. SINGER-CAPEK:  Thank you, Your Honor.

7          (Brief recess)

8          THE COURT:  Let me say this starting off before we go

9  any further.  Anytime, Mr. Davis, that you are credit due, you are

10  going to get credit for due.  In other words, I know the Bureau of

11  Prisons is this big organization, but I'm not saying I won't put

12  the language in that your attorney has talked about, but I don't

13  think your attorney can exactly say that herself.  So I can't

14  commit to that.  I will look at it.  If I like it, I will do it.

15  If not, I'll add my language.

16          At this point this time, I'm just not prepared to say,

17  okay, we'll tell the Bureau of Prisons it shall do something when

18  I haven't really looked at everything myself.

19          I want to assure you, no one is here to make you serve

20  anymore time than you are supposed to serve.  And there is a lot

21  of things I can't do, but there is a lot of things I can do.  And

22  if whatever credit you are supposed to get, you will eget it.  But

23  we're going to follow the process.

24          Ms. Singer-Capek, what do you have to say?

25          MS. SINGER-CAPEK:  Thank you, sir.

1     We're going to do exactly what Your Honor just said.  I
2  will submit some language to you, provide a copy to Ms. Dammers,
3  and then whatever the Court believes it is willing to put in the
4  order, either my language or its own language will be sufficient.
5     THE COURT:  Ms. Dammers, Mr. Findling, you all agree
6  with that?
7     MS. DAMMERS:  I have no objection to that, Your Honor.
8     MR. FINDLING:  No objection.
9     THE COURT:  Okay.
10     Mr. Davis, anything you want to say before I sentence
11  you?  Anything you want to present?
12     THE DEFENDANT:  I just want to first say that --
13     THE COURT:  Stand up, please.
14     THE DEFENDANT:  I want to say that I thank you.  And I
15  definitely don't want to withdraw my plea, and I just thank you
16  for your time.
17     THE COURT:  Okay.  Thank you, Mr. Davis.
18     All right.  At this time again we're start off advisory
19  offense level of 17, criminal history category of four, a custody
20  guideline range of 37 to 46 months.  As the Court has indicated,
21  the Court will accept the binding bargain of 39 months
22  confinement.
23     If you will stand up, Mr. Davis?
24     Mr. Davis, again, I want to explain to you why I'm
25  accepting this binding 39-months confinement.  You have a serious

1  offense here.  Having a firearm by a convicted felon is a serious

2  offense, and I think in looking at the 3553(a) factors I have to

3  take that into consideration, the history and characteristics of

4  the defendant, and also deterrence.  You are not supposed to have

5  a firearm.  You are not supposed to have a firearm.  I also look

6  at the overall record and all and everything, and looking at

7  everything, the factors and looking at the presentence report, I

8  find that this is a more or less a guideline, and I find this to

9  be appropriate and reasonable sentence under the circumstances.

10         Now, the sentence you are going to receive the rest of

11  it I'm going to tell you in about a minute.  You are still a young

12  man, you still have a full life in front of you.  From what I've

13  been told by my nieces and nephews, you have a very famous life in

14  front of you.  But I'm an old man, and I've seen a lot of things

15  in these years, and I've seen a lot of famous people lose out in

16  life.  And I won't to go down the list, I'm sure your lawyers can

17  tell you who they are.  I've seen a lot of famous athletes, a lot

18  of famous people in music, movies stars.  If they continue -- if

19  you continue down the track you continue down, you are going to be

20  like a lot of them.  You are going to wake up one morning broke,

21  and you are going to wake up one morning back in prison again,

22  worse -- or worse, you are not going to wake up at all one

23  morning.

24         So you have a talent.  Again, I apologize, I'm still a

25  Four Tops guy, it's hard to keep up.  I've been trying to find out

```
 1   more things.  According to my nieces and nephews, you have a great
 2   career in front of you.  You've got a prison term that you've got
 3   to do, to follow, and after that you are still a young man, you
 4   can do a lot if you abide by and follow the law.
 5            The law applies to everybody.  No matter who you are
 6   what you do, the law applies to you.  It applies to me.  It
 7   applies to Ms. Dammers.  It applies to the agents.  To
 8   Mr. Findling, Mr. Singer-Capek, everybody in this room.  You
 9   follow it, and again what I've been told you have a lot you can
10   get done.
11            Here is the rest of your sentence, you've got three
12   years supervised release, hundred dollars special assessment,
13   $5,000 fine.  You will remain in confinement until the Bureau of
14   Prisons can take you to the location they would like for you to
15   serve your sentence.  You will forfeit the guns, if it's a Glock,
16   Taurus.  Pursuant to Rule 3.2 of the Federal Rules of Criminal
17   Procedure, it is ordered that all the defendant's right, title and
18   interest in the property is hereby forfeited to the United States
19   Government.  There is no restitution involved in this matter.
20            The probation office has recommended to me -- and I'm
21   definitely going to hear from Ms. Singer-Capek and Mr. Findling --
22   that you have -- the other binding terms of probation you have to
23   follow, but there is one term they are recommending and I'm
24   inclined to agree with it.  I understand you do a lot of
25   traveling, but one term we will add to the terms and conditions of
```

1  probation, the defendant's travel outside of the Northern District

2  of Georgia shall be limited to verified employment within the

3  United States and shall not exceed seven calendar days per month,

4  nor will it exceed seven consecutive calendar days per month.

5         Now, I will add to that you have a right to go to the

6  probation officer, and the probation officer has the right to

7  extend it.  I understand there are tours and things like that that

8  singers go on, but it's important to this Court that we keep a

9  handle on where you are and what you are doing.  So if you have

10  some situation that exceeds seven days, you have the right to go

11  to the probation officer, they have the right, I will give them

12  the authority to extend that further.

13         MR. FINDLING:  One second, Your Honor.

14         MS. SINGER-CAPEK:  Your Honor, was that only seven days

15  a month?

16         THE COURT:  Seven calendar days, shall not exceed seven

17  calendar days per month without permission of the probation

18  officer.  Nor shall it exceed seven consecutive calendar days per

19  month without permission of the probation officer.

20         MS. SINGER-CAPEK:  Without permission, but he can go so

21  long as he has permission?

22         THE COURT:  As long as he has permission.

23         MR. FINDLING:  I can tell from my conversations with

24  him, generally if I'm correct, it's around twelve to fifteen days

25  a month that he travels.

```
 1              THE COURT:  I kind of figure, Mr. Findling, that's why I
 2   arranged this, with permission of the probation officer.
 3              But this way, again, I feel after looking at this, this
 4   is in the best interest of you, Mr. Davis, to have this here.  You
 5   probably don't agree with me right now, but there is some things I
 6   didn't agree with when I was twenty-five that makes a whole lot of
 7   sense now at over fifty.
 8              MR. FINDLING:  Your Honor, in fact, Mr. Davis takes the
 9   position that he has no problem with that at all.  He agrees with
10   Your Honor, that will probably be a good thing for him.
11              THE COURT:  Thank you, Mr. Findling, Mr. Davis.
12              At this time are there any objections coming from the
13   Government, Ms. Dammers?
14              MS. DAMMERS:  No objection.  Thank you.
15              THE COURT:  Mr. Findling, Ms. Singer-Capek, any
16   objections coming from the defense?
17              MS. SINGER-CAPEK:  No, sir.  We have -- Mr. Findling has
18   one additional request.
19              THE COURT:  All right.
20              MR. FINDLING:  Your Honor, in the sentencing we
21   understand you've -- first I have to object to one thing on the
22   record.  You are not an old man.  Because if you are, then I am.
23   And I'm a Four Tops guy.
24              THE COURT:  Mr. Findling means dog years.
25              MR. FINDLING:  No, no.  Don't do that.
```

 1          Your Honor, I understand you've made it perfectly clear,

 2   we all --

 3          THE COURT:  Let me say this:  I don't mean any

 4   disrespect, Mr. Findling.  As a matter of fact, since I got this

 5   case I always try to make sure I know who defendants are that I'm

 6   dealing with so I try to -- not try, I have read up on you and

 7   tried to listen to the things you've said, and the songs and

 8   things.  You know, not everybody said, hey, I may be an old man,

 9   but I'm not a dinosaur.  But so when I say the Four Tops, that

10   does not mean any disrespect to you whatsoever.

11          THE DEFENDANT:  None taken.

12          THE COURT:  According to my younger friends, nieces and

13   nephews, you are quite good.

14          MS. SINGER-CAPEK:  As he knows my daughter wanted to

15   take the day off from school to come today.

16          MR. FINDLING:  He and I always have one understanding,

17   and that is to me, he's just Radric Davis.  I try my best to get

18   to know him as a person.  Even to the things, Your Honor, such as

19   him agreeing to the probation saying immediately if it was spread

20   over time, it's probably the best thing for him.  I think he has a

21   great grasp on that, I think, Your Honor, that's really consistent

22   with what I'm about to address with the Court.  And that is,

23   again, we in reaching an 11(c) resolution, there was some of the

24   weaknesses of Mr. Davis that we addressed, and I think the

25   Government understood, I think that's what really brought us to

1    together on an 11(c) resolution.

2         One of the things, and we shared this with the

3    presentence report, is that he has had a pretty severe addiction

4    issue.  In fact, I bring to the Court's attention that from the

5    time of his arrest on he has lost over fifty pounds, and one of

6    the reasons he's lost over fifty pounds he is no longer able to

7    use what's called lean.  Lean, Your Honor, we read about with

8    young musicians, is a combination of cough syrup, which is

9    promethazine and Codeine mixed with sodas, and it's really at

10   epidemic proportions right now to people in the industry.  And it

11   causes bloating is what I've asked.  So abstinence and doing some

12   exercise, he is fifty pounds lighter than he was before.

13        Nevertheless, Your Honor, we would like -- and we would

14   like him to be able to at whatever facility he goes to to receive

15   treatment at the RDAP program, residential drug and alcohol

16   program.  We understand that because of his record and because of

17   the offense, he may be prevented.  We believe that to be the BOP,

18   but we ask the Court to make that recommendation.

19        Now, with that in mind and so Your Honor understands,

20   with his desire to really be a better person and to rehabilitate

21   himself, as much as he would like to do his time on this coast and

22   be near his people and his friends, he believes that it would be a

23   true disruption to his treatment to be around everybody that knows

24   him.  So we have done some research, and we think that we're not

25   going to be disingenuous and ask you to recommend to a camp, given

1  his background, but we would ask that you recommend that he go to

2  a minimum security facility.  We're specifically asking based on

3  our research, Your Honor, that he go to FCI Taft, primarily the

4  second would be FCI Sheridan, Oregon.  Those are both minimal

5  facilities that do have a residential drug and alcohol program.

6          And I think this is a great example of his commitment,

7  Your Honor, the fact that he's asking the Court to send him 3,000

8  miles away.  He will have some support mechanism there, and there

9  will be some people that he knows can visit him, obviously far

10 outnumbered by those locally, but he believes that the program

11 will be the best thing for him and he believes that if he's local

12 all the people that know him will just serve as a disruption.  So

13 we ask for that recommendation.

14          THE COURT:  Hold on a second.

15          Ms. Dammers?

16          MS. DAMMERS:  Your Honor, we don't object to the Court

17 recommending that the defendant receive intensive alcohol

18 treatment, rehabilitation.  However, we would object to the Court

19 recommending a particular security level.  That is a Bureau of

20 Prisons matter.  They have a formula.  They have a -- after

21 interviewing and reviewing the record, the best place for any

22 particular defendant.

23          THE COURT:  I can't say what security level.  I can

24 recommend a place on the west coast.

25          MS. DAMMERS:  We would have no objection to that.

1          THE COURT:  Ms. Dammers is right.  I have no problem

2     about recommending drug treatment.  I think that's an excellent

3     recommendation, and that will be part of the sentencing.  I can

4     say I recommend that he be housed in a facility on the west coast,

5     but whether it's minimum security or whatever, that --

6          MR. FINDLING:  Would Your Honor be able to put those two

7     facilities?  Only because we researched and they do have the RDAP

8     program where apparently there are some opportunities for him to

9     get into those respective programs.

10          MS. SINGER-CAPEK:  The way it can be worded is that, if

11     his security level --

12          THE COURT:  I think I can do that.  If his security

13     level meets minimum security, then he goes to those particular

14     places.

15          MS. DAMMERS:  It's merely a recommendation.  The Bureau

16     of Prisons is not going to be faithful followers of

17     recommendations, anyway.

18          THE COURT:  You are being kind, Ms. Dammers.

19          MS. SINGER-CAPEK:  That was a nice way to say it.

20          MR. FINDLING:  That will be acceptable and appreciated.

21          MS. DAMMERS:  Thanks.

22          THE COURT:  Anything else from the Government?

23          MS. DAMMERS:  No thank you, Your Honor.

24          THE COURT:  Anything else, Mr. Findling?

25          MR. FINDLING:  No, Your Honor.

1           THE DEFENDANT:  No, no.

2           THE COURT:  I have to explain your appeal rights to you,

3    Mr. Davis.

4           You can appeal your conviction if you believe your

5    guilty plea was somehow unlawful or involuntary or if there was

6    some other fundamental defect in the proceedings that was not

7    waived by your guilty plea.

8           You also have the statutory right to appeal your

9    sentence under certain circumstances, particularly if you think

10   your sentence is contrary to law.  However a defendant may waive

11   those rights as part of a plea agreement, and you've entered into

12   a plea agreement which waives some or all of your rights to appeal

13   the sentence itself.  Such waivers are generally enforceable, but

14   if you believe the waiver is unenforceable, you can present that

15   theory to an appellate court.

16          With few exceptions any notice of appeal must be filed

17   within 14 days of judgment being entered in your case.  If you are

18   unable to pay the cost of an appeal, you may apply for leave to

19   appeal in forma pauperis.  If you so request, the clerk of court

20   will prepare and file a notice of appeal on your behalf.

21          Mr. Davis, any questions about your right to appeal?

22          THE DEFENDANT:  I understand.

23          THE COURT:  Anything else at all?

24          THE DEFENDANT:  No.

25          MR. FINDLING:  No, sir.

1          THE COURT:  Thank you all.  Everybody have a great

2    afternoon.

3          (Proceedings adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                          C-E-R-T-I-F-I-C-A-T-E

2

3

4

5   United States District Court

6   Northern District of Georgia

7

8        I, Lois D. Phillips, Official Court Reporter of the United

9   States District Court for the Northern District of Georgia, do

10  hereby certify that the foregoing pages inclusive, constitute a

11  true transcript of the proceedings had before the said court held

12  in the City of Atlanta, Georgia, in the matter therein stated.

13

14       In testimony whereof I have hereunto set my hand on this

15  15th day of November, 2015.

16

17

18

19

20               _____

21                    Lois D. Phillips, RMR, CRR

22                      Official Court Reporter

23                   Northern District of Georgia

24

25
```